**UNITED STATES of America,**
**Plaintiff,**

v.

**INTERNATIONAL BUSINESS MA-**
**CHINES CORPORATION,**
**Defendant.**

**No. 69 Civ. 200 (DNE).**

United States District Court,
S. D. New York.

Jan. 13, 1976.

Raymond M. Carlson, Joseph H. Widmar and Robert R. Donlan, U. S. Dept. of Justice, Antitrust Div., for plaintiff United States.

Cravath, Swaine & Moore, New York City, for defendant IBM.

### MEMORANDUM

EDELSTEIN, Chief Judge:

This memorandum arises upon the motion of International Business Machines Corp. [hereinafter referred to as IBM], defendant in this antitrust action, for an order vacating Pretrial Order No. 4, as Amended.

### BACKGROUND

During a pretrial conference on May 4, 1972, IBM counsel reported to the court that IBM was troubled by "a history of the Department [of Justice, plaintiff in this action,] continuing, apparently, to feel free to try this case in the papers . . . ." Tr. May 4, 1972, at 79. IBM counsel then requested from the court "an order to the Department of Justice that it stop communicating with the press." Tr. May 4, 1972, at 80. After discussing that request with counsel for both parties, the court concluded that:

> This is a public trial. All the proceedings are public. All the documents and transcripts which are on file with the clerk of this office are public and available to any members of the press, any members of the news media, any members indeed, of the public. It would appear to me that in the interest of accurate, objective, dispassionate and fair comment and reporting, that all information concerning this trial should be obtained by reporters if they find sufficient interest in this case, to be present at these hearings and to cull their information from public documents and [no others].

> It would seem to me in all fairness a restriction should be placed both on the plaintiff and on the defendant that no news dissemination either by press release or by interview should be permitted without the consent of the Court. If a reporter wants to have a copy of the complaint, that complaint is available in the files of the Clerk's Office, and indeed to the extent . . . plaintiff or the defendant would wish to make available a copy of any document which is on file with the court, that may be done, provided the admonition and the in-

struction is carefully adhered to that it be not accompanied by any comment, any gloss, any rubbing, any dramatization or any characterization. Let the documents speak for themselves. And I would ask that an order be framed to that effect.

Tr. May 4, 1972, at 90–91.

The court's request that an order restricting both plaintiff and defendant be framed was met with gratitude on the part of IBM counsel. *Id*. at 92. To clarify the scope of the order the court added that:

This order is directed not only to the plaintiff and the defendant, but to all witness parties under their control. And I would expect that this order be strictly adhered to. There is no attempt to cut off the press or the news media from any source of information. These hearings are open. Each of you or both of you may notify the press or any other member of the news media. The files are open, public and available to anybody who would wish to peruse them.

When you frame your order, if you want to indicate any other avenues perhaps which are necessary to you in which this order may be oppressive or too great a restraint, I will consider that.

*Id*.

On May 12, 1972, a final draft of Pretrial Order No. 4, prepared through the joint efforts of counsel for plaintiff and defendant, was presented to the court. Tr. May 12, 1972, at 41–42. That order was signed and filed on the same day.

On September 12, 1972, in the course of a hearing arising out of questions raised by the press, the court further commented on Pretrial Order No. 4 and expressed its willingness to clarify or modify the order:

I have no pride of authorship in Pretrial Order No. 4. This order was drafted with the assistance, coopera-

tion of the government and the defendant. If it contains language that is confusing, this Court is willing and desirous to rectify it, to make modifications, all to the effect and purpose of giving the press and the media all the openendedness that a court can possibly render in the interests of fair play and justice to the parties.

I say here and now that the Court will confer with counsel for the purpose of expanding the order, for the purpose of eliminating any possible confusion, for the purpose of making it clear that the public has a right to know, and indeed, this Court wants the public to be fully aware of every proceeding that goes on in this courtroom, and this courtroom will always be open to the public and to the press.

Tr. Sept. 12, 1972, at 36–37.

Shortly thereafter, counsel for both parties reconsidered and discussed Pretrial Order No. 4 and on October 16, 1972 submitted to the court an amended version of that order. Tr. Oct. 16, 1972, at 44–49. Pretrial Order No. 4, as Amended was signed and filed on that day.

On November 1, 1972, the government complained to the court about remarks of the then Chairman of the IBM Board of Directors, Mr. Learson, which were alleged to be violative of Pretrial Order No. 4, as Amended. Tr. November 1, 1972, at 143. The court urged restraint in the making of any remarks concerning the litigation and expressed concern that any statement such as that made by Mr. Learson might allow inferences that the speaker had obtained inside information about the ultimate outcome of the case and that there was a great danger that unscrupulous speculators could employ indiscriminate remarks to manipulate the market. The court further suggested that if the wording of Pretrial Order No. 4, as Amended created confusion, that an application should be made for an order modifying or vacating Pre-

trial Order No. 4, as Amended. Tr. Nov. 1, 1972, at 175–81.

### THE INSTANT MOTION

As IBM counsel argued at an earlier time, Pretrial Order No. 4 "is an order or truth. It is not . . . an order of suppression or an order of censorship or a gag order." Tr. Sept. 12, 1972, at 21. Moreover, the order was proclaimed to be within the guidelines of the New York Fair Trial-Free Press Conference by its executive director. *The Evening Press* (Binghamton, N. Y.) Section C. (Nov. 24, 1972).

Despite these facts and the fact that Pretrial Order No. 4 was entered at IBM's request and with its consent, IBM has now moved the court to vacate that order on both constitutional and non-constitutional grounds. Plaintiff agrees that the order should be vacated at this time, rather than allowing it "to become the source of the very kind of distracting claims and proceedings that . . . it was designed to forestall." *Plaintiff's Supplemental Memorandum in Response*, at 13.

This court does not look with favor upon attempts by parties to release themselves from obligations which they have sought, have voluntarily undertaken, and have benefitted from for a long period of time. Moreover, this court is not persuaded by many of the factual allegations regarding matters relating to Pretrial Order No. 4 made by defendant on this and on other occasions. Nevertheless, the parties agree that the order should be vacated at this time, and the court sees no point in further belaboring this matter. Under these circumstances, and recognizing that if IBM's instant motion is granted counsel for both parties will continue to be bound by the provisions of the Code of Professional Responsibility, this court need not and does not reach the constitutional arguments presented nor the concomitant question of waiver by IBM

of the rights it now asserts. With the admonition that the court will not hesitate to invoke disciplinary sanctions if necessary, defendant's motion is granted and Pretrial Order No. 4, as Amended is hereby vacated.

So ordered.